1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Landon Amini,

      Plaintiff

v.

CSAA General Ins. Co.,

      Defendant

**2:15-cv-0402-JAD-GWF**

**Order Granting Motion for Partial Summary Judgment**

[ECF No. 65]

      Landon Amini sues his automobile-insurance carrier, CSAA General Insurance Company, claiming that its handling of his 2013 car-accident claim breached his policy and the covenant of good faith and fair dealing and violated Nevada's Unfair Claims Practices Act (UCPA).[1]  CSAA moves for summary judgment on Amini's bad-faith and UCPA claims; alternatively, it moves to strike Amini's request for attorney's fees and punitive damages.[2]  Because CSAA has shifted the burden to Amini—and Amini fails to produce specific evidence showing that there is a genuine issue for trial on these claims or that he is entitled to punitive damages—I grant CSAA's motion, enter summary judgment on Amini's second and third claims for relief, strike his requests for attorney's fees and punitive damages, and refer this case to a magistrate judge for a mandatory settlement conference on Amini's sole remaining breach-of-contract claim.[3]

**Background**

**A.**     **Amini notifies CSAA of a potential claim under his uninsured-motorist policy.**

      Amini was in a car accident with an uninsured driver in October 2013.  On October 29, 2013, Amini's counsel notified CSAA of a potential claim under the uninsured/underinsured motorist (UIM) policy that Amini held with the company, that he would be representing Amini for purposes

---

[1] ECF No. 19.

[2] ECF No. 65.

[3] I find these matters suitable for disposition without oral argument.  L.R. 7-2(d).

of the claim, and that all future correspondence should be sent to his office.[4]  CSAA promptly confirmed receipt of counsel's letter, acknowledged his representation of Amini, and requested that counsel forward copies of all relevant medical bills and records and otherwise keep it apprised of the nature and extent of Amini's injuries and complete the enclosed Medicare-eligibility form.[5]  Between November 2013 and February 2014, CSAA sent four more letters requesting this information but received no response from Amini.[6]  On February 7, 2014, CSAA sent Amini's counsel a check for $1,000—the policy limit under his medical-payments coverage.[7]  Almost two months after CSAA's fifth letter requesting information about Amini's treatment status, Amini's counsel sent CSAA a completed medical-authorization form for one of Amini's treatment providers.[8]

**B.      Amini demands that CSAA settle his UIM claim for the $250,000 policy limit, the parties are unable to reach a settlement, and Amini files this lawsuit.**

On April 22, 2014, Amini's counsel sent a letter claiming $96,107.86 in current medical specials and $2.7–3.9 million in future medical expenses and demanding that CSAA agree to tender the $250,000 policy limit by May 2, 2014.[9]  Amini's settlement demand apparently did not include

---

[4] ECF No. 65-1 at 70.

[5] *Id.* at 72.

[6] ECF No. 65-1 at 75 (December 4, 2013, letter requesting Medicare form); *id.* at 77 (January 8, 2014, letter indicating that CSAA had not received correspondence from Amini since the initial correspondence two months earlier and again requesting basic information relating to the claim, including the police report and any information on Amini's injury-treatment status); *id.* at 79 (January 29, 2014, letter inquiring: "Is your client still treating?  Has your client been referred for MRI, CT scan, Xrays?  Is your client receiving care from an Orthopedic doctor? Neurologist? Pain Specialist?"); *id.* at 83 (February 12, 2014, letter notifying Amini that his claim had been transferred to a different claims specialist for further handling and requesting medical-authorization forms from each treatment provider and a complete medical-providers list).

[7] *Id.* at 81.

[8] ECF No. 86.  It appears that this hospital treated Amini immediately following the accident.  ECF No. 65-1 at 91.  In his first settlement letter, Amini estimated his medical specials from UMC at $29,359.71.  *Id.* at 95.

[9] ECF No. 65-1 at 88.  In the letter, Amini disclosed an additional ten treatment providers.

1   the slew of medical records it referenced, so CSAA promptly requested these records and a 12-day

2   extension of time to respond to Amini's settlement demand so that it could evaluate his claim with

3   those records.[10]

4          On May 5, 2014, Amini provided the billing and medical records identified in his settlement

5   demand via e-mail.[11]  Amini's counsel and the claims-adjuster exchanged a series of e-mails

6   discussing the demand and related records.[12]  After Amini's counsel became hostile and repeatedly

7   threatened to bring a bad-faith lawsuit,[13] CSAA retained attorney Dan Curriden to handle certain

8   aspects of Amini's claim, including communications with Amini's counsel.[14]

9          On May 15, 2014, Curriden sent Amini's counsel a letter confirming that CSAA was

10   exercising its right under the policy to examine Amini under oath and to request that Amini submit

11   to an independent medical examination (IME).[15]  Amini was examined under oath on May 28,

12   2014,[16] and his independent medical examinations by Drs. Schifini and Sanders were completed on

13   July 16th.[17]  CSAA also hired a third party to conduct an independent audit of Amini's medical

14   bills.[18]

15

16

17   ───────────────

18   [10] Id. at 103 (April 25, 2014, letter stating that CSAA had not yet received the medical and billing
     records and requesting extension); id. at 105 (April 29, 2014, letter stating that CSAA still had not
19   received the records).

20   [11] Id. at 107–108.

21   [12] Id. at 108–126.

22   [13] Id.

23
     [14] ECF No. 65-3.
24
     [15] ECF No. 65-1 at 130.
25
26   [16] Id. at 135.

27   [17] Id. at 137, 164.

28   [18] ECF No. 65-2 at 11; ECF No. 65-1 at 212–247.

1       In August and September 2014, Amini's counsel sent correspondence demanding the IME

2    reports and a claim decision and threatening legal action.[19]  CSAA forwarded a copy of Dr.

3    Schiffini's report but represented that it could not evaluate the case fully until it had Dr. Sanders's

4    IME report, too, which was still being prepared.[20]

5       On October 7, 2014, CSAA sent a letter rejecting Amini's $250,000 policy-limit demand and

6    offering to settle the disputed claim for $100,000;[21] alternatively, CSAA offered to mediate the claim

7    with Attorney Greg Hafen at his earliest available date.[22]  Amini's counsel declined the invitation to

8    mediate and countered to settle for $200,000;[23] CSAA increased its offer to $110,000,[24] which Amini

9    rejected, and then he filed this lawsuit in Nevada's Eighth Judicial District Court.[25]  CSAA removed,

10   invoking this court's diversity jurisdiction.[26]

11  **C.**    **CSAA moves for partial summary judgment.**

12       CSAA moves for summary judgment on Amini's bad-faith and UCPA claims; alternatively,

13   it requests that I strike Amini's prayer for attorney's fees and punitive damages.[27]  This insurer

14   argues that there is no dispute that it acted reasonably in disputing the amount of Amini's claims and

15   that it did not engage in unfair-claims practices or act with malice, fraud, or oppression, as is

16   required to recover punitive damages.  And, as a matter of law, it contends, Amini cannot recover

17   attorney's fees for his UCPA claim.

18

---

19   [19] ECF No. 65-1 at 204, 251.

20   [20] *Id.* at 206, 253.

21   [21] *Id.* at 258, 260.

22   [22] *Id.* at 260.

23

24   [23] *Id.* at 262.

25   [24] *Id.* at 264.

26   [25] ECF No. 1-2 at 2–6.

27   [26] ECF No. 1.

28   [27] ECF No. 65.

1    Amini responds that CSAA has not met its summary-judgment burden and that whether
2  CSAA acted in bad faith or violated the UCPA is genuinely disputed.[28]  Amini also contends that he
3  has produced clear and convincing evidence that CSAA acted with malice, fraud, or oppression, so
4  punitive damages are appropriate.  But he does concede that he cannot recover attorney's fees as
5  damages under the UCPA.[29]

**Discussion**

6

**A.      Summary-judgment standards**

7

8    Summary judgment is appropriate when the pleadings and admissible evidence "show there
9  is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of
10 law."[30]  When considering summary judgment, the court views all facts and draws all inferences in
11 the light most favorable to the nonmoving party.[31]  If reasonable minds could differ on the material
12 facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the
13 facts are undisputed and the case must proceed to the trier of fact.[32]

14    If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of
15 material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts
16 showing that there is a genuine issue for trial as to the material facts"; he "must produce specific
17 evidence, through affidavits or admissible discovery material, to show that" there is a sufficient
18 evidentiary basis on which a reasonable fact finder could find in his favor.[33]  The court may only

19

20

---

21   [28] *See* ECF No. 67.

22   [29] *Id.*

23   [30] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

24

25   [31] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

26   [32] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

27

28   [33] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

consider properly authenticated, admissible evidence in deciding a motion for summary judgment.[34]

**B.      The state of the record**

In his opposition, Amini relies almost exclusively on the expert report of Attorney Charles M. Miller, who opines that CSAA failed to comply with insurance-industry standards for claims handling.[35]  CSAA objects to consideration of Miller's report because Amini failed to timely and properly disclose this expert under FRCP 26(a)(2).[36]  Expert disclosures were due by November 9, 2015,[37] and CSAA represents that Amini did not disclose Miller or his report until he filed his opposition—five months after the deadline for expert disclosures passed.[38]  Additionally, discovery has now closed, and Amini has not moved to re-open discovery to designate his belatedly disclosed expert.  Because Amini did not properly disclose this expert as required by Rule 26(a)(2), I sustain CSAA's objection and I decline to consider the report because this expert's testimony will be excluded at trial.

Even were I to consider the report, Amini offers no evidence to support the factual assertions that it contains.[39]  Parties who fail to provide pinpoint citations to evidence supporting factual assertions risk exclusion of that evidence.  Further complicating my task is that Amini's response violates Local Rule 56-1, which requires litigants to provide "a concise statement setting forth each fact material to the disposition of the motion, which the party claims is or is not genuinely in issue, citing to the particular portions of any pleading, affidavit, deposition, interrogatory, answer,

---

[34] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[35] ECF No. 67-1.

[36] ECF No. 68.

[37] ECF No. 31.

[38] Amini attempts—but fails—to cure this deficiency by attaching a Rule 26 disclosure to his opposition.  ECF No. 67.

[39] The report would be admissible only as evidence of Miller's opinions, not to prove the existence of facts in the record as set forth in the report, as Amini attempts to do. *In re Citric Acid Litigation*, 191 F.3d 1090, 1101 (9th Cir. 1999).

admission, or other evidence upon which the party relies."[40]

But even where there has been a complete failure to respond in accordance with a local rule, I may not grant a summary-judgment motion merely because it is (effectively) unopposed.[41]  I must instead view all of the evidence in the light most favorable to Amini to determine whether the undisputed facts warrant summary judgment on his second and third claims, and I do that here.

**C.      Insurance bad faith**

An insurer breaches its duty to act in good faith when it unreasonably refuses "to compensate the insured for a loss covered by the policy."[42]  To establish a prima facie case of insurance bad faith in Nevada, an insured must show that (1) the insurer had no reasonable basis for disputing coverage and (2) that the insurer knew or recklessly disregarded the fact that there was no reasonable basis to dispute coverage.[43]  Even if a claim is wholly (or partially) denied, a bad-faith claim is subject to summary judgment "if the defendant demonstrates that there was a genuine dispute as to coverage"[44] because "if the insurer had a reasonable basis to deny coverage, there can be no finding of bad faith."[45]

CSAA argues that it reasonably denied Amini's claim because the claim value was genuinely disputed by two independent medical examiners and an independent audit, and genuine value

---

[40] L.R. 56-1.  I also note that CSAA failed to comply with L.R. 7-3, which limits replies in support of summary-judgment motions to 20 pages.  Its reply is 20 pages, but it attaches an additional 19 pages of objections for a total of 39 pages.  The reply should have incorporated all responses to Amini's argument and any objections into a single, rule-compliant document.  In the interest of fairness, I consider only the objections raised in the reply brief itself in ruling on CSAA's summary-judgment motion.

[41] L.R. 7-2(d).

[42] *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) (internal citation and quotation marks omitted).

[43] *Powers v. United Serv. Auto Ass'n*, 962 P.2d 596, 604 (Nev. 1998).

[44] *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003).

[45] *Sherwin v. Infinity Auto Ins. Co.*, 2013 WL 5918312, *3 (D. Nev. Oct. 31, 2013) (internal citation omitted).

1    disputes do not give rise to bad-faith liability.[46]  Amini responds that CSAA's sole reliance on the

2    two doctors it hired to examine Amini is itself an act of bad faith,[47] and that CSAA's failure to pay

3    the undisputed amount of the claim constitutes bad faith.[48]

4

5    **D.    CSAA is entitled to summary judgment on Amini's bad-faith claim because it has
         shown that it had a reasonable basis for disputing the amount of the insurance claim.**

6            Though the parties dispute the value of Amini's claim, no reasonable jury could conclude

7    from the record before me that CSAA acted in bad faith when it offered Amini only $110,000 to

8    settle his claim or, alternatively, to attend mediation.  CSAA's evidence shows that it had a

9    reasonable basis for disputing the value of Amini's claims: it relied on two independently prepared

10   medical reports, an independent audit of Amini's medical bills that showed the amounts were

11   excessive, Amini's examination under oath, and the medical records he provided to evaluate his

12   claim, and it determined his claim had a value of $100,000–$110,000 in light of all of this

13   information.[49]  Because CSAA has demonstrated that it had a reasonable and good-faith basis to

14   dispute the value of Amini's claim, the burden shifts to Amini to "produce specific evidence,

15   through affidavits or admissible discovery material," showing that there is a sufficient evidentiary

16   basis on which a reasonable fact finder could find in his favor.[50]  Amini failed to carry his burden to

17   offer evidence showing either that CSAA had no reasonable basis to dispute the amount of his claim

18   or that it knew or recklessly disregarded the fact that there was no reasonable basis for doing so.[51]

19

20   [46] ECF No. 65 at 14–16.

21   [47] ECF No. 67 at 3–11.

22   [48] *Id.* at 11–15.

23   [49] ECF No. 65-2.

24
25   [50] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME
     Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

26   [51] As discussed above, I consider only properly authenticated, admissible evidence at summary
27   judgment, and I decline to consider Amini's improperly disclosed expert report.  Amini makes
     various unsupported assertions of fact throughout his opposition, which I also do not consider.  He
28   also cites bates numbers for various documents, which may well be admissible, but I decline to

1    I am also unpersuaded by Amini's second argument that CSAA's failure to pay the

2  "undisputed amount" of the claim constitutes bad faith.[52]  The only authority that Amini cites for this

3  proposition is a decision by another judge in this district in *Sherwin v. Infinity Insurance Company*.[53]

4  But Amini overreads *Sherwin*.  In *Sherwin*, Judge Andrew Gordon rejected the insurer's argument

5  that it could not be liable for bad-faith claim denial simply because it had paid Sherwin a portion of

6  her requested claim rather than denying the claim outright.[54]  But because the insurer denied the

7  additional amounts that Sherwin requested under the UIM policy and Sherwin failed to present

8  sufficient evidence that the insurer had no reasonable basis to deny the additional amounts she

9  requested, Judge Gordon granted summary judgment in the insurer's favor.

10    Like the insurer in *Sherwin*, CSAA did not deny coverage outright; it disputed the amount of

11  the claim.  I recognize that a partial denial can support a bad-faith claim, and CSAA's

12  acknowledgment of partial coverage does not, by itself, shield it from bad-faith liability.  But, like

13  Sherwin, Amini has failed to offer sufficient evidence that CSAA had no reasonable basis to decline

14  to tender him the full policy limit.  *Sherwin* undermines—not supports—Amini's position.  And

15  CSAA is entitled to summary judgment on Amini's bad-faith claim.

16  **E.    Unfair claims practices under NRS § 686A.310**

17    Section 686A.310 of the Nevada Revised Statutes prohibits unfair practices in processing

18  insurance claims.  In relevant part, the UCPA prohibits an insurer from failing to acknowledge or act

19  on claim communications in a reasonably prompt manner,[55] failing to effectuate prompt, fair and

20  equitable settlements of claims in which liability of the insurer has become reasonably clear,[56] and

21

22  consider these statements as evidence because he does not provide pinpoint citations to the record
     identifying where this evidence is located or show that it is properly authenticated.

23

24  [52] ECF No. 67 at 11–15.

25  [53] *Sherwin v. Infinity Auto Ins. Co.*, 2013 WL 5918132 (D. Nev. 2013).

26  [54] *Id.* at, *3.

27  [55] NEV. REV. STAT. § 686A.310(1)(b).

28  [56] NEV. REV. STAT. § 686A.310(1)(e)

1   "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by

2   offering substantially less than the amounts ultimately recovered in claims brought by such insureds,

3   when the insureds have made claims for amounts reasonably similar to the amounts ultimately

4   received."[57]

5          CSAA argues that it is entitled to summary judgment because it responded promptly to all

6   claim requests and communications, provided a viable alternative to litigation, offered to pay a

7   portion of Amini's claim, and did not compel Amini to bring a lawsuit. Further, Amini has not

8   "ultimately recovered" any amount for his claim, precluding liability under 686A.310(1)(f).[58]

9          Without citing to any admissible evidence, Amini argues that CSAA failed to act in a

10  reasonably prompt manner on his claim communications and in effectuating a settlement because it

11  failed to timely assign his claim to a senior claims adjuster (it was eventually assigned to one, and he

12  does not explain how an earlier assignment would have affected the handling of his claim), take his

13  statement, conduct his examination under oath,[59] request medical records,[60] and conduct independent

14  medical exams.[61] He also contends that CSAA compelled him to bring this suit by not offering him

15  a fair settlement.

16
17          ***1.    CSAA is entitled to summary judgment on Amini's UCPA claim because he lacks
            evidence to show that CSAA violated N.R.S. § 686A.310(1)(b), (e), or (f).***

18          The record shows unequivocally that CSAA reasonably and promptly responded to claim

19  communications and engaged in settlement negotiations. Amini's counsel first alerted CSAA that

20  Amini would be demanding UIM coverage on October 29, 2013, and he did not officially demand

21

22  _____

23  [57] NEV. REV. STAT. § 686A.310(1)(f). Amini did not identify which provisions of the UCPA CSAA
    allegedly violated in his complaint. He now identifies subsections (b), (e), and (f), and I find that the
    allegations in his complaint can reasonably be construed as claims under these subsections.
24
25  [58] ECF No. 65 at 19–22.

26  [59] *Id.* at 17.

27  [60] *Id.* at 18.

28  [61] *Id.* at 18–20.

coverage until April 22, 2014.[62]  But after his initial communication in October 2013, it was Amini's counsel who ignored all of CSAA's correspondence—including its repeated requests for information about Amini's injuries, treatment, and supporting documents—for nearly six months, until Amini's counsel finally responded with a completed medical-authorization form for one of Amini's eleven treatment providers and a time-sensitive demand letter threatening litigation and claiming extensive injuries and future damages of at least $3 million.[63]

Amini did not turn over the medical records and billing statements that he relied on in his demand letter until May 5, 2014;[64] CSAA then examined Amini under oath three weeks later[65] and conducted two IMEs in mid-July.[66]  CSAA requested modest extensions to respond to Amini's time-sensitive demands, consistently explaining that it could not properly evaluate his claims until it had both IME reports.[67]  Shortly after having received both IME reports and the independent audit, CSAA offered to settle Amini's claim or to mediate it.  This delay is not unreasonable, especially when Amini himself delayed resolution of his claim for at least six months by failing to respond to CSAA's communications and requests for authorizations and documents and in light of the amount of Amini's claim and the extent of his alleged injuries.[68]

In short, based on this record, no reasonable jury could find that CSAA failed "to

---

[62] ECF No. 65-1.

[63] *Id.* at 96–98.

[64] *Id.* at 119.  In some correspondence Amini claims that CSAA was in possession of the relevant records as early as his April 22 demand, but in others he acknowledges that CSAA did not receive the documents until May 5th.  In any event, the record reflects that Amini's counsel sent an electronic copy of the records on May 5th.

[65] *Id.* at 135.

[66] *Id.* at 137, 164.

[67] ECF No. 65-1 at 206, 253.

[68] *See Williams v. American Family Mutual Ins. Co.*, 593 Fed. Appx. 610, 612 (9th Cir. 2014) (holding that "[a] thirteen-week delay is not an unreasonable delay that violates [Nevada's] Unfair Claims Practices Act" where some delay was caused by insured's counsel failing to provide insurer with medical records).

1   acknowledge and act reasonably promptly upon communications with respect to claims arising under

2   insurance policies"[69] or that it failed to "effectuate prompt, fair and equitable settlements of claims"[70]

3   in which its liability was clear—the value of Amini's claim has never been clear and continues to be

4   genuinely disputed.[71]  CSAA is therefore entitled to summary judgment on Amini's UPCA claim

5   under NRS § 686A.310(1)(b) and (e).

6        As to Amini's NRS § 686A.310(1)(f) claim, CSAA offered to settle Amini's insurance claim

7   for $110,000—an amount substantially less than Amini claims is due under the policy.  But Amini

8   has not "ultimately recovered" any amount due under the policy, let alone an amount substantially

9   more than the $110,000 offer he rejected or "reasonably similar" to the $200,000–$250,000 he

10  demanded as is required to succeed on a subsection (f) claim.  Accordingly, CSAA is also entitled to

11  summary judgment on this claim.

12       **2.    *Amini's UCPA claim fails for the additional reason that he does not allege or offer evidence to show that he suffered damages as a result of the claims-practices violations.***

13

14       Amini concedes—and I agree—that attorney's fees are not recoverable for UCPA

15  violations.[72]  And he offers no response to CSAA's argument that he cannot recover medical

16  damages caused by the tortfeasor in the underlying car accident for his UCPA claim.  The UCPA

17  limits damages against an insured to those rights and remedies available to the state insurance

18  commissioner and to "any damages sustained by the insured as a result of" the unfair-claims

19  practice,[73] so CSAA is correct that Amini cannot recover general medical damages for this claim.

20  Because Amini does not allege or offer evidence to show that the alleged UCPA violations caused

21  him any monetary damages or otherwise jeopardized the merit of his UIM claim, summary judgment

22

23

---

[69] NEV. REV. STAT. § 686A.310(1)(b).

[70] NEV. REV. STAT. § 686A.310(1)(e).

[71] *See supra* at section C.

[72] *Tracey v. American Family Mut. Ins. Co.*, 2010 WL 5477751, *4–5 (D. Nev. Dec. 3, 2010).

[73] NEV. REV. STAT. § 686A.310(2).

is appropriate.

**F.      Amini's punitive-damages prayer is stricken.**

To recover punitive damages under Nevada law, a plaintiff must show by clear and convincing evidence that the defendant acted with malice, oppression, or fraud, express or implied.[74] A defendant acts with this intent when it acts in conscious or deliberate disregard of the rights of others.[75]  CSAA argues that Amini lacks evidence to show that it acted with this intent.[76]  Amini responds with the conclusory argument that CSAA had "motive and intent to violate the duties it owed to Amini based on compensation programs."[77]

The only evidence to support Amini's contention that CSAA "may" have a compensation plan that incentivizes claim handlers to undervalue claims is his inadmissible expert report and a citation to a 2002 case in Nevada's Second Judicial District Court in which a CSAA claims employee purportedly testified that the "loss ratio" is one factor in the company's incentives program.[78]  This record falls well short of demonstrating clear and convincing evidence of malice, oppression, or fraud.  I therefore find that the record does not support Amini's demand for punitive damages, and I strike it.

---

[74] NEV. REV. STAT. §42.005.

[75] *Id.*

[76] ECF No. 65 at 24–25.

[77] *Id.* at 27.

[78] ECF No. 67 at 29.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that CSAA's motion for partial summary judgment **[ECF No. 65] is GRANTED**. **I grant summary judgment for CSAA and against Amini on claims one and two and I strike his requests for attorney's fees and punitive damages.** This case will proceed on Amini's sole remaining claim for breach of contract.

IT IS FURTHER ORDERED that this case is referred to a magistrate judge for a mandatory settlement conference.

Dated this 4th day of November, 2016

_____
Jennifer A. Dorsey
United States District Judge